RECEIPT #_____ 57635

AMOUNT $_____ 15.00

SUMMONS ISSUED_____ ✓

LOCAL RULE 4.1_____

WAIVER FORM_____

MCF ISSUED_____

BY DPTY. CLK._____

DATE_____ 7.29.04

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

HIGHFIELDS CAPITAL MANAGEMENT L.P.,

    Plaintiff,

v.

JOHN DOE,

    Defendant.

Civil Action No.

# 04 - 11684 GAO

## COMPLAINT

MAGISTRATE JUDGE_____

By and for its Complaint, Highfields Capital Management L.P. ("Highfields Capital") states as follows:

### STATEMENT OF THE CASE

1.    This case involves the repeated anonymous and unlawful publication of statements on an Internet message board by an unknown John Doe defendant purporting to represent Highfields Capital. Defendant's publication of these statements, using the pseudonym "highfieldscapital," infringed Plaintiff's federal and state statutory and common law trademark rights and breached common law obligations owed to Plaintiff.

### PARTIES

2.    Plaintiff Highfields Capital is a Delaware limited partnership with its principal place of business at 200 Clarendon Street, Boston, Massachusetts 02117.

3.    The residency of the John Doe defendant is unknown at this time.

### JURISDICTION AND VENUE

4.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

5.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2).

FACTS

6.     Highfields Capital is the investment manager for several private investment partnerships for accredited investors. It manages domestic and offshore hedge funds with assets under management totaling several billion dollars.

7.     Among the companies in which Highfields Capital has an investment is Silicon Graphics, Inc., which is traded on the New York Stock Exchange under the ticker symbol SGI. SGI is a "small-cap" stock; as of July 28, 2004, SGI's market capitalization was approximately $373 million.

8.     Highfields Capital holds over 13.6 million shares of SGI, representing approximately 5.22% of the outstanding shares of SGI, and making Highfields Capital SGI's largest shareholder.

9.     Yahoo!, Inc. ("Yahoo!") operates a website that offers, among other things, access to thousands of message boards on various subjects. Among the message boards appearing on Yahoo! is one regarding SGI (the "SGI Message Board"), where users can exchange information regarding investments, including investments in SGI.

10.    Messages posted on a Yahoo! message board are accessible to anyone viewing the board. It is not necessary to register or "log in" in order to access posted messages. Messages posted on a Yahoo! message board stay posted for an indefinite amount of time, so that a user can read messages which have been posted there for days, weeks, months, or even years. Indeed, the SGI Message Board contains over 188,000 messages, dating to September 1997. Because of the easy access to and seemingly perpetual duration of messages posted to a Yahoo! message board, users making posts can reach a wide audience over a long time period.

11.    In order to post messages on a Yahoo! message board, a user must register with Yahoo! by electronically completing a form that requires the user to choose a pseudonym, or

-2-

"username" and a password, and to provide an e-mail address. The use of such pseudonyms

allows users who post messages on a Yahoo! message board to do so anonymously. As noted,

notwithstanding the fact that registration is required to post on Yahoo! message boards, messages

posted on a Yahoo! message board are freely accessible and can be read by all Internet users.

After a message is posted to a Yahoo! message board, it is assigned a unique message number.

12.    As part of the registration process required to post a message on a Yahoo!

message board, a user must agree to the terms of the Yahoo! Terms of Service (the "Service

Agreement"). The Service Agreement provides, among other things, that users agree not to:

- "upload, post, email, transmit or otherwise make available any Content that is unlawful, harmful, threatening, abusive, harassing, tortious, defamatory, vulgar, obscene, libelous, invasive of another's privacy, hateful, or racially, ethnically or otherwise objectionable";

- "impersonate any person or entity, including, but not limited to, a Yahoo! official, forum leader, guide or host, or falsely state or otherwise misrepresent your affiliation with a person or entity";

- "upload, post, email, transmit or otherwise make available any Content that infringes any patent, trademark, trade secret, copyright or other proprietary rights ("Rights") of any party"; or

- "intentionally or unintentionally violate any applicable local, state, national or international law, including, but not limited to, regulations promulgated by the U.S. Securities and Exchange Commission, any rules of any national or other securities exchange, including, without limitation, the New York Stock Exchange, the American Stock Exchange or the NASDAQ, and any regulations having the force of law."

13.    The John Doe defendant has posted messages to the SGI Message Board. Upon

information and belief, the John Doe defendant executed an agreement to abide by the Service

Agreement in order to gain posting privileges to the Yahoo! message boards, including the SGI

Message Board.

14.    Because Highfields Capital is SGI's largest shareholder, statements by someone

purporting to be Highfields Capital regarding Highfields Capital's holdings in SGI may affect

the market for SGI stock. Indeed, the SGI Message Board is replete with messages referring to Highfields Capital with respect to its holding in SGI, and speculating about Highfields Capital's trading activity and investment strategy.

15.    On Wednesday, July 21, 2004, the John Doe defendant posted two messages to the SGI Message Board using the username "highfieldscapital," which were assigned message numbers 186539 and 186673. In message 186539, which was posted at 7:18 a.m., prior to the opening of the New York Stock Exchange, the John Doe defendant represented that "[i]t appears that this will be a very fine day." Later that day, at 7:16 p.m., after the markets had closed, in message 186673, the John Doe defendant purported to state on behalf of Highfields Capital that "[w]e trust our retail investor friends have taken advantage of this quarter's SGI pre-earnings rally, which occurred this morning. It's just Highfields' way of sharing important information with our smaller, yet still highly valued, partners in the exciting story of Silicon Graphics. While it's always impossible to be specific, it might be expected that the stock has now returned to its typical trading range."

16.    On or about Tuesday, July 27, 2004, the John Doe defendant posted another message to the SGI Message Board using the username "highfieldscapital." In this message, the John Doe defendant purported to state on behalf of Highfields Capital that "[w]e're [g]oing [t]o [b]uy a new corporate jet . . . a Gulfstream IV. It will have custom zebrano wood trim and Corinthian leather seats with plasma TVs. Best of luck to our retail friends today and tomorrow!"

17.    Yahoo! allows individuals accessing the Yahoo! message boards to report users who abuse the message boards by posting messages in violation of the Service Agreement or which are otherwise objectionable. Upon learning of the first two improper and unlawful posts

made by the John Doe defendant, Highfields Capital reported these posts to the Yahoo! Message Boards Abuse department. Yahoo! removed these posts, but subsequently, the John Doe defendant posted a third improper message to the SGI Message Board. Again, Highfields Capital reported this improper and unlawful post to the Yahoo! Message Boards Abuse department, and again it was removed. In responding to Highfields Capital's complaints via e-mail, Yahoo! indicated that it is in its "sole discretion" to determine "the appropriate action . . . with regard to [any] posts brought to [its] attention," including whether such posts should be removed.

18.    At least as early as March 1998, Highfields Capital adopted and began to continuously use in commerce the service mark HIGHFIELDS CAPITAL to identify its services and itself as a company.

19.    Since 1998, Highfields Capital has made a substantial investment in both time and money to develop, establish, and promote the HIGHFIELDS CAPITAL Mark, and, as a result, the mark has become known for identifying Highfields Capital and its business. The substantial goodwill of the business connected with the use of, and symbolized by, the HIGHFIELDS CAPITAL Mark is an extremely valuable asset of Highfields Capital.

20.    Highfields Capital is the owner of U.S. Registration No. 2,759,200, issued September 2, 2003, for the HIGHFIELDS CAPITAL Mark, for use in connection with "financial services; namely, financial and investment advisory services, investment management services and asset management services."

21.    Highfields Capital is also the owner of U.S. Registration No. 2,759,199, issued September 2, 2003, for the HIGHFIELDS Mark; U.S. Registration No. 2,773,812, issued October 14, 2003, for the HIGHFIELDS CAPITAL LTD. Mark; U.S. Registration No.

2,659,938, issued December 10, 2002, for the HIGHFIELDS CAPITAL MANAGEMENT

Mark; U.S. Registration No. 2,659,937, issued December 10, 2002, for the HIGHFIELDS

CAPITAL I LP Mark; U.S. Registration No. 2,786,751, issued November 25, 2003, for the

HIGHFIELDS CAPITAL II LP Mark; and U.S. Registration No. 2,737,113, issued July 15,

2003, for the HIGHFIELDS ASSOCIATES Mark, all for use in connection with "financial

services; namely, financial and investment advisory services, investment management services

and asset management services."

**COUNT I**
**(Trademark Infringement — 15 U.S.C. § 1114)**

22.    Highfields Capital repeats and incorporates herein the foregoing allegations of the

Complaint.

23.    As described above, since at least as early as November 1998, Highfields Capital

has been the continuous owner of, and has continuously used and exercised valid trademark

rights in, the distinctive HIGHFIELDS CAPITAL Mark.

24.    As described above, Highfields Capital is the owner of U.S. Registration No.

2,759,200, issued September 2, 2003, for the HIGHFIELDS CAPITAL Mark.

25.    Highfields Capital's ownership and use in commerce of the HIGHFIELDS

CAPITAL Mark predates the use by Defendant of the HIGHFIELDS CAPITAL Mark.

Highfields Capital's federal registration of the HIGHFIELDS CAPITAL Mark also predates the

use by Defendant of the HIGHFIELDS CAPITAL Mark.

26.    The John Doe defendant is and was at all relevant times at least constructively

aware of Highfields Capital's prior use, ownership, and registration of the HIGHFIELDS

CAPITAL Mark, and Defendant's conduct is therefore willful and intentional.

27.     The John Doe defendant uses the HIGHFIELDS CAPITAL Mark in connection with interstate commerce.

28.     The John Doe defendant's use in commerce of the HIGHFIELDS CAPITAL Mark, as described above, constitutes trademark infringement in violation of 15 U.S.C. § 1114 in that it is without Highfields Capital's consent and is likely to cause confusion, mistake, and/or deception with respect to Highfields Capital's registered trademark, all to the irreparable injury of Highfields Capital and the goodwill it has developed in the HIGHFIELDS CAPITAL Mark.

29.     As a direct and proximate result of Defendant's violations of 15 U.S.C. § 1114, Highfields Capital has been and will continue to be damaged.

30.     The Defendant's conduct is causing and will continue to cause Highfields Capital to suffer irreparable harm and, unless the John Doe defendant is restrained, Highfields Capital will continue to be so damaged, because it has no adequate remedy at law.

### COUNT II
### (False Designation of Origin — 15 U.S.C. § 1125(a)(1)(A))

31.     Highfields Capital repeats and incorporates herein the foregoing allegations of the Complaint.

32.     As described above, since at least as early as November 1998, Highfields Capital has been the continuous owner of, and has continuously used and exercised valid trademark rights in, the distinctive HIGHFIELDS CAPITAL Mark.

33.     As described above, Highfields Capital is the owner of U.S. Registration No. 2,759,200, issued September 2, 2003, for the HIGHFIELDS CAPITAL Mark.

34.     Highfields Capital's ownership and use in commerce of the HIGHFIELDS CAPITAL Mark predates the use by Defendant of the HIGHFIELDS CAPITAL Mark.

Highfields Capital's federal registration of the HIGHFIELDS CAPITAL Mark also predates the
use by Defendant of the HIGHFIELDS CAPITAL Mark.

35.    The John Doe defendant is and was at all relevant times at least constructively
aware of Highfields Capital's prior use, ownership, and registration of the HIGHFIELDS
CAPITAL Mark, and Defendant's conduct is therefore willful and intentional.

36.    The John Doe defendant uses the HIGHFIELDS CAPITAL Mark in connection
with interstate commerce.

37.    The John Doe defendant's use of the HIGHFIELDS CAPITAL Mark, as
described above, constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A)
in that it is likely to cause confusion, to cause mistake, or to deceive as to the affiliation,
connection, or association of the John Doe defendant with Highfields Capital and/or as to the
origin, sponsorship, or approval by Highfields Capital of Defendant's goods, services, or
commercial activity, all to the irreparable injury of Highfields Capital and the goodwill it has
developed in the HIGHFIELDS CAPITAL Mark.

38.    As a direct and proximate result of Defendant's violations of 15 U.S.C.
§ 1125(a)(1)(A), Highfields Capital has been and will continue to be damaged.

39.    Defendant's conduct is causing and will continue to cause Highfields Capital to
suffer irreparable harm and, unless the John Doe defendant is restrained, Highfields Capital will
continue to be so damaged, because it has no adequate remedy at law.

### COUNT III
### (Common Law Trademark Infringement)

40.    Highfields Capital repeats and incorporates herein the foregoing allegations of the
Complaint.

41.     As described above, since at least as early as November 1998, Highfields Capital has been the continuous owner of, and has continuously used and exercised valid trademark rights in, the distinctive HIGHFIELDS CAPITAL Mark.

42.     Highfields Capital's ownership and use in commerce of the HIGHFIELDS CAPITAL Mark predates the use by the John Doe defendant of the HIGHFIELDS CAPITAL Mark.

43.     The John Doe defendant is at least constructively aware of Highfields Capital's prior use and ownership of the HIGHFIELDS CAPITAL Mark, and Defendant's conduct is therefore willful and intentional.

44.     The John Doe defendant's use in commerce of the HIGHFIELDS CAPITAL Mark, as described above, constitutes common law trademark infringement in that it is without Highfields Capital's consent and creates and will continue to create a substantial likelihood of injury to business reputation or of the distinctive quality of the HIGHFIELDS CAPITAL Mark.

45.     As a direct and proximate result of Defendant's common law trademark infringement, Highfields Capital has been damaged and will continue to be damaged.

46.     Defendant's conduct is causing and will continue to cause Highfields Capital to suffer irreparable harm and, unless the John Doe defendant is restrained, Highfields Capital will continue to be so damaged, because it has no adequate remedy at law.

### COUNT IV
### (Trademark Dilution — Mass. Gen. Laws ch. 110B, § 12)

47.     Highfields Capital repeats and incorporates herein the foregoing allegations of the Complaint.

48.    As described above, since at least as early as November 1998, Highfields Capital has been the continuous owner of, and has continuously used and exercised valid trademark rights in, the distinctive HIGHFIELDS CAPITAL Mark.

49.    Highfields Capital's ownership and use in commerce of the HIGHFIELDS CAPITAL Mark predates the use by the John Doe defendant of the HIGHFIELDS CAPITAL Mark.

50.    Defendant's use in commerce of the HIGHFIELDS CAPITAL Mark, as described above, constitutes a violation of Mass. Gen. Laws ch. 110B, § 12, in that it is has caused and/or is likely to cause dilution of the distinctive quality of Highfields Capital's trademark, service mark, and trade name.

51.    Accordingly, pursuant to Mass. Gen. Laws ch. 110B, § 12, Highfields Capital is entitled to injunctive relief against the John Doe defendant's continued use of the HIGHFIELDS CAPITAL Mark.

## COUNT V
### (Defamation)

52.    Highfields Capital repeats and incorporates herein the foregoing allegations of the Complaint.

53.    The messages at issue were published on the SGI Message Board by Defendant and concern Highfields Capital.

54.    The messages at issue are false statements of fact in that the John Doe defendant purports that he represents Highfields Capital. In fact, he does not. These messages are also false statements of fact in that they purport to present positions taken by Highfields Capital, when in fact, Highfields has not taken the positions Defendant presented in the messages.

55.     The John Doe defendant knowingly presented information he knew to be false, including, but not limited to, his assertion that his statements represented the position of Highfields Capital.

56.     The messages at issue contains statements that are false.  The statements themselves and the inferences that arise from those statements are harmful to the reputation of Highfields Capital.  As a result of the publication of the messages, Highfields Capital's reputation has been damaged and it has incurred and will continue to incur damages.

57.     Defendant's conduct is causing and will continue to cause Highfields Capital to suffer irreparable harm and, unless the John Doe defendant is restrained, Highfields Capital will continue to be so damaged, because it has no adequate remedy at law.

## COUNT VI
### (Commercial Disparagement)

58.     Highfields Capital repeats and incorporates herein the foregoing allegations of the Complaint.

59.     The messages at issue were published on the SGI Message Board by Defendant and concern Highfields Capital.

60.     The messages at issue are false statements of fact in that the John Doe defendant purports that he is or that he represents Highfields Capital.  These messages are also false statements of fact in that they purport to present positions taken by Highfields Capital, when in fact, Highfields has not taken the positions Defendant presented in the messages.

61.     The John Doe defendant knowingly presented information he knew to be false, including, but not limited to, his assertion that his statements represented the position of Highfields Capital.

62.    The messages at issue contains statements that are false.  The statements themselves and the inferences that arise from those statements are harmful to the reputation of Highfields Capital and its business.  As a result of the publication of the messages, the reputation of Highfields Capital and its business has been damaged and Highfields Capital has incurred and will continue to incur damages.

63.    Defendant's conduct is causing and will continue to cause Highfields Capital to suffer irreparable harm and, unless the John Doe defendant is restrained, Highfields Capital will continue to be so damaged, because it has no adequate remedy at law.

### COUNT VII
### (Breach of Contract — Third Party Beneficiary)

64.    Highfields Capital repeats and incorporates herein the foregoing allegations of the Complaint.

65.    By using Yahoo!'s message boards, the John Doe defendant agreed to abide by the terms of the Yahoo! Service Agreement.  Under the Service Agreement, Defendant agreed, among other things, not to:

- "upload, post, email, transmit or otherwise make available any Content that is unlawful, harmful, threatening, abusive, harassing, tortious, defamatory, vulgar, obscene, libelous, invasive of another's privacy, hateful, or racially, ethnically or otherwise objectionable";

- "impersonate any person or entity, including, but not limited to, a Yahoo! official, forum leader, guide or host, or falsely state or otherwise misrepresent your affiliation with a person or entity";

- "upload, post, email, transmit or otherwise make available any Content that infringes any patent, trademark, trade secret, copyright or other proprietary rights ("Rights") of any party"; or

- "intentionally or unintentionally violate any applicable local, state, national or international law, including, but not limited to, regulations promulgated by the U.S. Securities and Exchange Commission, any rules of any national or other securities exchange, including, without limitation, the New York Stock Exchange, the

American Stock Exchange or the NASDAQ, and any regulations having the force of law."

66.    Plaintiff is a third party beneficiary of the Service Agreement in that the Service Agreement was intended to protect persons who would otherwise be victims of inappropriate communications by users of Yahoo! message boards.

67.    The John Doe defendant breached the Service Agreement in posting multiple messages using as a username "highfieldscapital," a mark owned by Highfields Capital. The John Doe defendant also breached the Service Agreement in posting multiple messages which improperly imply an affiliation with Highfields Capital and purport to represent positions of Highfields Capital.

68.    As a result of the John Doe defendant's breach of the Service Agreement, Highfields Capital has incurred or may incur substantial damages.

69.    Defendant's conduct is causing and will continue to cause Highfields Capital to suffer irreparable harm and, unless the John Doe defendant is restrained, Highfields Capital will continue to be so damaged, because it has no adequate remedy at law.

### COUNT VIII
### (Injunctive Relief)

70.    Highfields Capital repeats and incorporates herein the foregoing allegations of the Complaint.

71.    The messages posted by the John Doe defendant violate Highfields Capital's federal, state, and common law rights in the mark HIGHFIELDS CAPITAL. These messages are causing continuing irreparable harm to Plaintiff and its reputation, and will continue to do so if further messages are posted to the SGI Message Board or another Yahoo! message board.

72.    While Yahoo! has removed three previous posts published by the John Doe defendant under the pseudonym "highfieldscapital" on the SGI Message Board, upon

information and belief, there are currently no measures in place to prevent the John Doe

defendant from making any such future posts. Highfields Capital will continue to suffer

immediate and irreparable reputational and other harm, for which there is no adequate remedy at

law, if further messages are posted to the SGI Message Board or another Yahoo! message board.

73.    As a result, Defendant should be ordered to take all necessary steps to remove any

such statements from the SGI Message Board and other Yahoo! message boards, and also be

ordered to refrain from posting any similar such messages in the future.

WHEREFORE, Highfields Capital hereby requests:

(i)    judgment against Defendant for compensatory damages, punitive damages, costs of

suit;

(ii)   an order enjoining Defendant from posting any similar message in the future and

prohibiting Defendant from registering usernames on Yahoo! or other internet

services which infringe the marks held by Highfields Capital; and

(iii)  and for any and all such other relief as the Court may deem just or may be

determined at trial Plaintiff further seeks.

Respectfully submitted,

HIGHFIELDS CAPITAL MANAGEMENT L.P.

By its attorneys,

Gus P. Coldebella (BBO No. 566918)
Scott A. Katz (BBO No. 655681)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
617.570.1000

Dated: July 29, 2004
LIBA/1401593.3

-14-